GEORGE W. MARSH, respondent,

*v.*

JOHN K. VANNESS et al., appellants.

[Argued March 5th, 1909.    Decided June 14th, 1909.]

1. Evidence in foreclosure *held* insufficient to sustain the defence of usury.

2. Evidence in foreclosure *held* sufficiently corroborative of that of a defendant to establish that a certain payment had been made, and wholly on account of the mortgage.

3. A payment by a mortgagor on account thereof cannot be withheld by the creditor for other bills owing by mortgagor, but credit must be allowed on the mortgage.

4. Evidence in foreclosure *held* sufficient to make out an alleged payment.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Emery, whose opinion is as follows:

To this bill of foreclosure, filed by the assignee of the administrators of the mortgagee, two defences are set up at the hearing by four of the answering defendants—*first,* usury, and *second,* payment, either full or partial. As to the defence of usury, the answer of the mortgagor contains an allegation denying that complainant is entitled to interest on the mortgage

"for the reason that the said loan was tainted with usury by the said mortgagee demanding and receiving from this defendant a sum of money as a bonus for the making of the said loan, and also by receiving a sum of money in excess of the legal rate of interest allowed by the statute of the State of New Jersey on the actual sum of money as loaned."

The answers of the other three defendants (the wife of the mortgagee, a subsequent judgment creditor, and a subsequent grantee, whose absolute deed is claimed to be a mortgage) set out the charge of usury in substantially the same general words, and without any particulars of the alleged agreement. In order to be available as a defence at final hearing in equity, the terms of the usurious contract must be precisely and correctly set out, the quantum of the usurious interest must be specified, and the proof must correspond with the allegations. *Taylor* v. *Morris (Justice Depue, Court of Errors and Appeals, 1872), 22 N. J. Eq. (7 C. E. Gr.) 606, 611, 612; Crane* v. *Insurance Company (Court of Errors and Appeals, 1875), 27 N. J. Eq. (12 C. E. Gr.) 484; Kase* v. *Bennett (Vice-Chancellor Emery, 1895), 54 N. J. Eq. (9 Dick.) 97; 33 Atl. Rep. 248.* This is a case where complainant is entitled to a strict enforcement of the rules of pleading this defence. Nor am I satisfied that on the proofs usury has been satisfactorily made out. The mortgagee is dead, and evi-

dence only on one side, as to the actual agreement of loan, has been heard. The evidence of a witness named Allen is relied on to prove an oral agreement for a bonus of $200 on a loan of $3,000. Allen had sold the property in question to defendant Vanness, and conveyed to him, without receiving payment in full. He says that he negotiated with Marsh, the mortgagee, who demanded $200 as a bonus, and further says that he paid Marsh $125, which he received from Vanness for that purpose. This witness's credibility has been seriously shaken by the testimony of his neighbors at the time as to his reputation for veracity, and this circumstance, taken in connection with the statement of complainant, who assisted his father, the mortgagee, in his business, that the $125 procured from Vanness was paid by Allen for bills owing his father, who had previously received orders on Vanness which were unpaid, and that the payment of these bills was made a condition of the loan by Marsh to Vanness, makes Allen's evidence as to this agreement or payment insufficient to sustain the defence, even if this agreement had been sufficiently pleaded. This defence therefore must be overruled.

The defence of payment on account of the mortgage comprises several items, but the evidence is mainly directed to two payments, one of $500 and a subsequent payment of $1,000. The mortgage was for $3,000, dated April 24th, 1891, payable in one year, with interest at six per cent., payable semi-annually. Two payments of interest are endorsed on the bond, both in the handwriting of Vanness, who is a lawyer; one for $90, six months' interest, on October 24th, 1891; another for $180, one year's interest, on October 24th, 1892. No subsequent endorsements of interest were made previous to the death of Mr. Marsh (January 27th, 1902). It is admitted that on or about July 16th, 1894, a payment of $500 was made by Vanness to Marsh, and the dispute is whether the payment was to be applied wholly to the mortgage, or to be first applied to bills for meat, then owing by Vanness to Marsh, and the balance applied toward interest on the mortgage. The payment was made at the beef house of Marsh, and in the presence of a witness named Lewis, a butcher who was there on business at the time. Lewis says that

39

Vanness drove up in his wagon; Marsh went to the wagon, about two feet distant from the platform where they (Marsh and Lewis) were standing, and that Vanness handed Marsh a $500 bill and told him to put it on the bond and mortgage. The witness says he thinks Vanness said for interest. Vanness asked if Marsh had the bond and mortgage, to which Marsh replied that he did not. Lewis's recollection is that Marsh wrote a paper—a receipt or bill—and handed it to Vanness, but Vanness says that he is mistaken about this, and that Marsh commenced to write a receipt; but, as Vanness was hurrying for a train, he did not wait, and told him to endorse it on the bond. Reliance on Vanness's statements on matters vital to the case is very much shaken, not only by the general attack on his credibility, but by his own written certificates in relation to this mortgage. But inasmuch as it is clear that some payment was to be made on the mortgage, because the bills at that time did not amount to $500, and inasmuch as the mortgagor failed to endorse any payment at all on the bond at the time, the burden is on him, or those claiming under him, to satisfy the court that Lewis's evidence as to the object of the payment should not be received, notwithstanding the non-production of the receipt, if it was given. The witness appeared to me to be honest and credible, and I think his evidence sufficiently corroborative of that of Vanness to establish the fact that this payment was made, and that it was made only on account of the mortgage. If this appropriation was made, then the creditor had no right to withhold the payment for other bills, and the credit must be allowed.

Another payment claimed to have been made on the mortgage is one of $1,000, on June 23d, 1899, in connection with the release of a portion of the mortgaged premises by Mr. Marsh to the Plainfield Street Railway Company, which had constructed, or was about to construct, a railway through the premises, on a strip about eighty feet wide by one thousand four hundred feet long. The release was made to the railway company, and for the express consideration of one dollar. The company had agreed to pay, Vanness for the right of way, released from all liens, and Vanness undertook to procure the releases; the railway company not

itself paying for them. The question disputed on the facts is whether Mr. Marsh, before the execution of this release, received the sum of $1,000 from Vanness, on his account, as the consideration, or part of the consideration, for the release. Two witnesses, a lawyer named Haire and a witness named Strauch, both of New York, besides Vanness, swear to this payment as having been made to Mr. Marsh in their presence, and also in the presence of a Mr. Rosso, since deceased, in whose office Strauch was then employed. According to the account of these three witnesses, the money, $1,000 in bills, was produced by Colonel Haire, and by him handed over to Marsh directly, or to Vanness who then gave it at once to Marsh. This payment of the money was, according to the testimony of all the witnesses, made before Marsh's execution of the release, and on his demand for the payment before he would execute it. Haire says that he agreed to return it, or produce the release, and that to secure himself (or the clients he represented) he received two notes or orders for $500 each on the street railway company, with an assignment of Vanness's contract with the company for payment. The release was executed and acknowledged before Mr. George Bell, who delivered it to Mr. Marsh. Mr. Marsh, then, according to this witness, asked Vanness for the paper he promised to give him, and Vanness then drew a paper, which was read over to Mr. Marsh, who said it was all right. A paper has been produced by complainant, which is a certificate signed by Vanness, dated June 23d, 1899, the same date as the release, as follows:

"This is to certify that I have never paid anything on account of the principle sum of a mortgage of $3,000 made by John K. Vanness to John R. Marsh, bearing date April 24th, 1891, covering a tract of land of about 36 acres lying on the southeast side of east front street in the city of Plainfield."

Vanness says that this paper was drawn and delivered to Mr. Marsh in the morning before the payment of the money, and that the paper drawn in Mr. Bell's office related to the payment of back taxes and assessments on the property. No such paper has been produced, and so far as Vanness is concerned, his testimony

as to this payment is so discredited by his subsequent admissions and actions that it may, for present purposes, be considered as altogether unreliable to prove payments on the mortgage. This transaction of the exchange of papers took place in the presence only of Mr. Bell, neither Mr. Haire, Rosso nor Strauch being present, and the real question as to the payment is whether their positive account of the actual payment, taken by itself, or in connection with Vanness's own actions and conduct, indicating or implying that no payments had been made, justifies the conclusion that their evidence must be rejected as willfully false. Evidence attacking Colonel Haire's credibility was given, but in my judgment it was too slight to be effective for that purpose, and the weight to be given to his evidence must be determined without regard to this aspect of it. The extreme improbability of his story, and that of Strauch confirming it, is the main reason urged for rejecting it.

Further consideration of the case has confirmed the impression received at the hearing that there is no such improbability in the account as to justify me in rejecting it. And on this further consideration, and on reading over again the evidence and briefs of counsel, an aspect of this payment, and especially of Vanness's conduct relating to the paper signed on that day, and now produced, presents itself, which may explain how this certificate came to be made by Vanness and delivered to Marsh and accepted by him, notwithstanding that he had received the $1,000. Colonel Haire swears that this advance of the $1,000 was, on his part, part of a transaction which contemplated the procuring from Mr. Marsh of an assignment of the mortgage, and the payment of the whole amount of the principal, $3,000, and that before handing over the money Mr. Marsh had agreed to assign the mortgage. Vanness now swears that he did not understand that there was any such arrangement, and that he first learned of it when Colonel Haire, after the delivery of the release, asked Mr. Marsh to make the agreement to assign the mortgage, against which he (Vanness) then protested. I should be inclined to believe Haire's statement rather than Vanness's, and it may be that, for some purposes not now clearly disclosed by the evidence, it was

intended that ultimately the mortgage itself should be trans-
ferred by Mr. Marsh, and that Mr. Marsh, in connection with
such assignment to Haire, required a certificate that the full
amount was due, treating the $1,000 received from Haire as so
much paid by him on account of the assignment, if the assign-
ment was afterwards carried out. Nothing further was in fact
done about the assignment, and Vanness's statement is that at his
request and objection made at once, Mr. Marsh said he would not
assign it. Vanness having met the pressing emergency by getting
this release so as to procure the money from the trolley company,
and having secured the money from Haire, may have preferred
to stop any further proceedings on a line which would give any
person other than Mr. Marsh control of the mortgage. The
$1,000 advanced by Haire seems to have been afterwards paid
back out of the money received from the trolley company. This
suggestion as to a possible explanation of the certificate may not
remove all the difficulties which arise on the evidence, but the real
question is whether the positive evidence of Haire and Strauch
corroborating Vanness as to payment of the sum of $1,000 to
Marsh, in connection with the execution of the release, is so in-
credible and improbable that it must be rejected as willfully false
on the part of these witnesses. In this aspect of the case a proba-
bility or possibility that Vanness was dealing double with Haire
and his clients, as well as with Marsh, is not, on the whole evi-
dence in this case, so remote, that it should not be considered, in
its bearing on the effect of his own writings, declarations and
actions, in reference to the amount due on the mortgage. And
on the question of the improbability of the story of these wit-
nesses that the payment was made to Marsh in consideration of
the release there must also be weighed in the balance the im-
probability that Mr. Marsh would, in the situation of the mort-
gage and in consideration of Vanness's previous conduct toward
him, execute a release, without getting some consideration.

Weighing the whole evidence, the conclusion I come to on this
branch of the case is that the payment of $1,000 has been made
out and must be credited. For the other payments, no evidence
other than that of Vanness himself is produced without corrobo-

ration, and this evidence is so contradicted and overcome by the effect of his own declarations and admissions, both written and oral, and by the attack on his credibility, that it cannot be considered sufficient.

I will advise a decree for complainant for the amount due on the bond after deducting these two payments. The hearing before me was brought on, on the decree *pro confesso,* and the answers of four of the defendants, setting up the defences above considered. Other answers appear to have been filed by subsequent encumbrancers consenting to sale to pay amount due on complainant's mortgage and other encumbrances.

On settling decree I will hear counsel as to whether an order of reference should be made as to these subsequent encumbrances.

*Mr. Winfield S. Angleman,* for the appellants.

*Mr. Patrick H. Gilhooly,* for the respondent.

PER CURIAM.

We concur in the findings of fact of the learned vice-chancellor, and upon that ground affirm this decree without considering the question of pleading involved. Costs were properly allowed the complainant, this being a foreclosure suit. *P. L. 1902 p. 528 § 53.*

*For affirmance*—THE CHIEF-JUSTICE, GARRISON, SWAYZE, REED, TRENCHARD, PARKER, BERGEN, VOORHEES, MINTURN, BOGERT, VREDENBURGH, VROOM, GRAY, DILL—14.

*For reversal*—None.